```
UNITED STATES DISTRICT COURT
  NORTHERN DISTRICT OF INDIANA
       HAMMOND DIVISION
```

```
BANK OF AMERICA NA, as           )
Successor to LaSalle Bank NA,    )
                                 )
          Plaintiff              )
                                 )
     v.                          )  CIVIL NO. 2:10 cv 170
                                 )
HOME LUMBER COMPANY LLC; HOME    )
LUMBER COMPANY, INC.; UNITED     )
STATES SMALL BUSINESS            )
ADMINISTRATION, as Successor in  )
interest to Regional Development )
Company; REGIONAL DEVELOPMENT    )
COMPANY,                         )
                                 )
          Defendants             )
```

OPINION AND ORDER

This matter is before the court on the Motion to Amend Counterclaim [DE 40] filed by the United States Small Business Administration on September 1, 2011. For the reasons set forth below, the motion is **GRANTED IN PART** and **DENIED IN PART.**

Background

This action was brought by Bank of America to recover money due under several promissory notes and to foreclose on the two parcels of real estate that secured the notes. The parties recently agreed to sell one of the parcels to a third party. One parcel, commonly known as 11200 Delaware Parkway, Crown Point, Indiana, remains for disposition in this action.

Home Lumber owned the parcel at issue. Northwest Indiana Regional Development Company held a mortgage on that parcel which was executed on January 13, 2001, and recorded on February 5, 2001. The mortgage later was assigned to the United States Small Business Administration (SBA). On June 9, 2005, Home Lumber executed and delivered a mortgage on the same parcel in favor of Marie M. Beckman in the amount of $907,000, which was recorded on June 14, 2005. Home Lumber also granted LaSalle Bank National Association a mortgage on the parcel in the amount of $2,000,0000, on August 1, 2005. LaSalle recorded the mortgage on August 9, 2005. Bank of America succeeded LaSalle Bank and now holds the mortgage.

LaSalle Bank agreed to loan Home Lumber the money on the condition that SBA would subordinate its lien to LaSalle's for the balance due on the $2,000,000 note. The subordination agreement executed by SBA, Home Lumber, and LaSalle states in relevant part:

> As a condition precedent to Lender's perfor-
> mance, the SBA mortgage must be subordinated
> to the Lender's Mortgage. SBA is willing to
> subordinate the lien of the SBA Mortgage
> provided it retains its lien priority with
> regard to all other legal or equitable inter-
> ests in the property. * * * Except as ex-
> pressly provided herein, this agreement shall
> not alter the priority of the SBA Mortgage
> . . . with regard to any legal or equitable
> interest in the property. Owner and Lender
> shall hold SBA harmless from any impairment

> of its lien with regard to any third party,
> which is occasioned by this subordination.

In its motion to amend, SBA explains that by entering the subordination agreement, its lien lost priority and was impaired by Beckman's mortgage. SBA requests leave to amend its counterclaim to assert that the subordination agreement, specifically the provision stating that Home Lumber and Bank of America shall hold SBA harmless for third-party liens, protects SBA's interest from any reduction in recovery caused by Beckman's lien. SBA also proposes to amend its counterclaim to state that its lien was impaired by the tax lien that arose from Bank of America's failure to pay the real estate taxes on the parcel.

Bank of America filed a motion for summary judgment on December 17, 2010. SBA filed a response on January 11, 2011, and later supplemented its response at the request of the court. The parties agreed to vacate the discovery deadlines and stay ruling on the motion for summary judgment and filed a joint stipulation on March 28, 2011. The joint stipulation states that Bank of America's mortgage is superior to SBA's. SBA filed its motion to amend its counterclaim on September 1, 2011. Bank of America opposes SBA's motion as futile and untimely, in part because it was filed after Bank of America filed its motion for summary judgment and the parties' filed their joint stipulation.

3

Discussion

Federal Rule of Civil Procedure 15(a) provides that "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." *See also* **Foman v. Davis**, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d. 222 (1962). This Circuit has recognized that because the complaint merely serves to put the defendant on notice, it should be freely amended as the case develops, as long as amendments do not unfairly surprise or prejudice the defendant. **Jackson v. Rockford Housing Authority**, 213 F.3d 389, 390 (7th Cir. 2000). The decision to deny leave to amend a complaint is an abuse of discretion "only if 'no reasonable person could agree with the decision.'" **Winters v. Fru-Con, Inc.**, 498 F.3d 734, 741 (7th Cir. 2007)(*quoting* **Butts v. Aurora Health Care, Inc.**, 387 F.3d 921, 925 (7th Cir. 2004)); **Ajayi v. Aramark Business Services**, 336 F.3d 520, 530 (7th Cir. 2003).

A motion to amend is more likely to be denied if it takes place at a relatively late stage in the proceedings. **Aldridge v. Forest River, Inc.,** 635 F.3d 870, 875-76 (7th Cir. 2011); **Winters**, 498 F.3d at 741. *See also* **James v. McCaw Cellular Communications, Inc.,** 988 F.2d 583, 587 (5th Cir. 1993) (holding that the district court did not abuse its discretion in denying

4

plaintiff's motion to amend where motion filed almost 15 months after original complaint, ten months after joinder deadline, five months after deadline for amendments, and three weeks after defendant filed motion for summary judgment). The moving party bears the burden to show some valid reason for neglect and delay in seeking to amended its pleadings. ***Butts***, 387 F.3d at 921; ***Doe v. Howe Military School,*** 227 F.3d 981, 990 (7th Cir. 2000) (explaining that motion to amend was denied, in part, because the plaintiffs provided no reason why their amended claim was not filed earlier). *See also* ***NL Industries, Inc. v. GHR Energy Corp.,*** 940 F.2d 957, 964 (5th Cir. 1991)(holding that court did not abuse its discretion in denying motion for leave to file second amended complaint where plaintiff sought to amend its pleading two years after it first brought defendant into litigation and after defendant had requested summary judgment, but plaintiff provided no good reason for not acting sooner).

Leave to amend may be denied at the district court's discretion for "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." ***Foman,*** 371 U.S. at 182, 83 S.Ct. at 230. "The court may deny a motion to amend based, at least in part, on the fact that

the motion to amend was filed after the final deadline set by the court for the filing of amendments."  61A Am.Jur.2d Pleading §779 (2007).  *See* ***Avatar Exploration, Inc. v. Chevron, U.S.A., Inc.***, 933 F.2d 314, 321 (5th Cir. 1991)(finding no abuse of discretion where the motion to amend was filed after the final deadline set by the court for filing of amendments and the amendment would provide no benefit to movants under the circumstances).

In addition, the court may deny leave because the amendment is futile.  ***Bethany Phamacal Company, Inc. v. QVC, Inc.***, 241 F.3d 854, 861 (7th Cir. 2001).  Futility generally is measured by whether the amendment would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  ***Peoples v. Sebring Capital Corp.***, 209 F.R.D. 428, 430 (N.D. Ill. 2002).  However, if a summary judgment motion is pending, futility may be shown with reference to the entire summary judgment record.  ***Peoples***, 209 F.R.D. at 430.  If the proposed amendment is not clearly futile, denying leave to amend on this ground would be improper.  *See* Wright & Miller, 6 *Federal Practice & Procedure* §1487, at 637-642 (2d ed. 1990)("If the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face, the court may deny leave to amend.").

Bank of America first opposes SBA's motion as untimely.  SBA filed its counterclaim 16 months before it requested leave to

6

amend, after Bank of America filed its motion for summary judgment, and after the parties filed a joint stipulation. Although the procedural posture of a case often dictates whether leave should be granted, this action is not as mature as the docket might otherwise reflect. This matter has been subject to stay, the discovery deadline, originally extended through May 6, 2011, has been vacated, and the court has not set deadlines for amending the pleadings. More importantly, SBA's proposed amendment does not bear on Bank of America's motion for summary judgment or the parties' joint stipulation.

The joint stipulation submitted by the parties states that Bank of America's interest in the parcel is superior to SBA's. SBA is not asking to amend its counterclaim to reflect that its interest has priority over Bank of America's. Rather, SBA is asking that Bank of America and Home Lumber honor the clause in the subordination agreement stating they will hold SBA harmless for any third-party liens. It is SBA's position that, should Beckman's lien take priority over its own, Bank of America and Home Lumber are responsible for any loss SBA incurs as a result of Beckman's third-party lien. SBA had first priority before entering the subordination agreement and would not have been subject to Beckman's lien if it had not entered the subordination agreement. SBA argues that because Beckman was not a party to

7

the subordination agreement, her interest is a third-party lien of the type contemplated by the subordination agreement. Regardless of the merits of SBA's proposed amendment, SBA's motion is timely because the proposed amendment will not affect any of the events that have occurred thus far and discovery remains ongoing.

Moreover, SBA has set forth a sufficient justification for its delay. SBA was apprised of the reduction to its potential recovery through the recent correspondence setting forth the depreciated value of the property and the estimate of the liens on the property, including Beckman's. This prompted SBA to seek enforcement of the subordination agreement. If its potential recovery had not been reduced by the depreciation and Beckman's lien, enforcement of the agreement may have been unnecessary.

Bank of America also challenges whether SBA's proposed amendment can withstand a motion to dismiss. Bank of America first argues that the proposed amendment does not make clear how SBA's interest was impaired. SBA was aware of Beckman's interest at the time it entered the subordination agreement, and Bank of America argues that this knowledge defeats any claim SBA may assert concerning its priority over Beckman's. However, the subordination agreement does not distinguish among third-party lien holders. Beckman was not a party to the agreement and therefore was a third-party lien holder, possibly of the type the

8

parties contemplated in their agreement.  At this stage, the court must not resolve the merits of the proposed cross claim but should only consider whether SBA stated a claim.  It is plausible that the provision may be interpreted so that SBA may recover any loss it experiences from Beckman's lien.  At this stage, SBA's proposed amendment states a tenable claim, the sufficiency of which may be tested in a later motion.

SBA also proposed to amend its complaint to state that Bank of America permitted unpaid taxes to accumulate and that its interest has been impaired by the unpaid taxes.  The land owner, Home Lumber, was responsible for paying taxes on the property. Ind. Code §6-1.1-2-4 ("The owner of any real property on the assessment date of a year is liable for the taxes imposed for that year on the property").  Therefore, SBA misstates the facts in Paragraph 15 of its proposed counterclaim by alleging that Bank of America permitted unpaid taxes to accumulate.  Bank of America did not have any obligation to pay the taxes.

Although the subordination agreement did not distinguish among third-party lien holders, the subordination agreement states that SBA would be held harmless from any impairment of its lien.  Prior to entering the subordination agreement, SBA's interest would have been affected by the tax lien.  *See* Indiana Code §6-1.1-22-13 (stating that real estate taxes have priority

over all other liens).  Because SBA would have been subject to the lien irrespective of the subordination agreement, SBA cannot show that its interest was impaired by the third-party tax lien. The distinction between Beckman's lien and the tax lien is that SBA would have been subject to the tax lien irrespective of the subordination agreement, but, absent the subordination agreement, SBA would have had priority over Beckman's lien.  Therefore, it is possible for SBA to show that its interest was impaired by Beckman's lien through the subordination agreement, but it cannot demonstrate impairment by the tax lien.

_____

For the foregoing reasons, the Motion to Amend Counterclaim [DE 40] filed by the United States Small Business Administration on September 1, 2011, is **GRANTED IN PART** and **DENIED IN PART**.  SBA may amend its counterclaim to state that its lien was impaired by Beckman's mortgage, but it must eliminate the provisions of its proposed counterclaim stating that Bank of America permitted unpaid taxes to accumulate and that its lien was impaired by unpaid real estate taxes.

ENTERED this 24th day of October, 2011

s/ ANDREW P. RODOVICH
United States Magistrate Judge